IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joshua L. Gallishaw, #251362, ) | CIVIL ACTION NO. 9:11-0404-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Officer DeLoach; Officer Williamson; ) | |
| Sgt. Hicks; Sgt. Housier; Lt. Housier; ) | |
| Capt. Best; Warden Cohen; Major NLN; ) | |
| Sgt. Marquez; S.C.D.C. Director; and ) | |
| other unknonwn John Does and Jane Does; ) | |
| Individual and Official Capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC) and frequent filer of litigation in this Court, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 30, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 3, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion for summary judgment on October 31, 2011, and a supplemental response on November 30, 2011.



Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that he is an inmate at the Wateree Correctional Institution (WCI), part of the South Carolina Department of Corrections prison system. Plaintiff alleges that while he was previously housed at the Ridgeland Correctional Institution (RCI), he was playing cards with seven other inmates in the "day room" when he was "denied the right to use the restroom, drink water, or eat in a sanitary manner" because they were "locked in". Plaintiff alleges that this required the inmates to relieve themselves in "bottles and mop buckets", and that they had to eat their food (while being denied anything to drink) in the presence of these bottles and buckets full of human waste. Plaintiff alleges that he tried to resolve this matter verbally with several of the correctional officers named as Defendants in this case, and that he also wrote to the Defendant Warden, all "to no avail". Plaintiff alleges that this "went on for a couple [of] days" before the were eventually "let out".

Plaintiff was subsequently transferred to WCI, where he is currently housed. Plaintiff complains that the Department of Corrections has implemented a two meal feeding policy to inmates on the weekends, which is "starving" him because he has to go so many hours without food. Plaintiff alleges that this policy was implemented because of overcrowding and budget issues.

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.


Plaintiff also alleges that while at WRI, the Defendant Marquez denied Plaintiff his "right to eat breakfast" because Marquez said Plaintiff "disrespected him", and sent Plaintiff back to the dorm. Plaintiff alleges that Dorm Officer Canty was going to order him a tray, but Marquez told him not to. Plaintiff alleges he wrote to "Major Boggs" concerning this matter, who "referred it back to Capt. Pugh". Plaintiff alleges that he was then seen by Pugh and some other correctional officers, including Marquez, who told Plaintiff that they "didn't have to feed me if I disrespected one of them." Plaintiff alleges that he "wrote to grievance, but no answer back yet." Plaintiff also alleges that classification is "denying me credit due", which he believes is the fault of Sgt. Marquez because Plaintiff had threatened to "file paperwork on him . . . .". Plaintiff alleges that he wrote a grievance concerning this matter on February 23, 1998, "to no avail". Plaintiff further alleges that he has been unable to get copies of his grievances, and "therefore I am unable to exhaust some of these grievances . . . .". Plaintiff seeks monetary damages, that no retaliation be taken against him, that he receive all of his "credits", and that his grievances be "release[d]". See generally, Verified Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Ann Hallman, who attests that she is the Inmate Grievance Branch Chief Coordinator with the SCDC. Hallman attests that Plaintiff has filed Grievance Nos. RCI 1137-09, WCI 0527-10 and WCI 0552-10 regarding the alleged incidents in his Complaint, all of which are attached to her affidavit as Exhibit A. With respect to Grievance No. RCI 1137-09, Hallman attests that Plaintiff's Step 1 Grievance[3] was denied by the Warden on January 20, 2010. This grievance involved the lock

---

[3]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal
(continued...)



down of prisoners in the day room. Hallman attests that Plaintiff then filed a Step 2 appeal of this grievance, which was denied on April 21, 2010.

With respect to Grievance WCI 0527-10 (relating to Marquez not providing him with breakfast on October 12, 2010, and with respect to Plaintiff only being fed twice daily on weekends), Hallman attests that Plaintiff attempted to file a Step 1 Grievance form which was returned to him unprocessed because it was not completed properly. Hallman attests that Plaintiff was given five (5) days to refile this grievance, which he did as WCI 0552-10. Plaintiff's Step 1 grievance in WCI 0552-10 was denied on March 22, 2011, following which Plaintiff filed his Step 2 grievance appeal. Plaintiff's Step 2 appeal was denied on July 13, 2011. See generally, Hallman Affidavit, with attached exhibits.

The Defendants have also submitted an affidavit from Defendant Hausey (correct spelling), who attests that he was employed at RCI as a corrections officer at the time of the incident alleged in the Complaint. Hausey attests that he held the rank of Lieutenant and was in charge of the normal day to day operations of the Beaufort B Unit. Hausey attests that at the time at issue in the Complaint this Unit was on lock down for security reasons, and that when a Unit is on lock down the inmates are allowed to use the restroom and have water at specific time frames during the course of the lock down but are at no time completely deprived of the ability to do so. Hausey also attests that at no time while the Beaufort B wing was on lock down did he observe the Plaintiff or any other inmates urinating or defecating in bottles or mop buckets, nor is he aware of any complaints of this

---

³(...continued)
the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).

- 4 -



being done by other inmates. Hausey further attests that, additionally, all mop buckets would have been in the storage closet while the Unit was on lock down. Hausey attests that as the Unit was on lock down at the time of Plaintiff's alleged complaints, he and the other officers in this Unit had a duty to maintain order for security reasons and acted in a reasonable manner in doing so. See generally, Hausey Affidavit.

The Defendant Nicholas Marquez has also submitted an affidavit in which he attests that he was a correctional officer employed at WCI during the time period relevant to Plaintiff's complaint. Marquez attests that at the time of the alleged incident he held the rank of Sergeant. With regard to Plaintiff's allegation that he denied Plaintiff the right to eat breakfast, Marquez attests that Plaintiff and several other inmates were being loud, disrespectful and non-compliant with his orders while on line at the cafeteria. Marquez attests that at the time of the alleged incident, a portion of the cafeteria was closed and inmates were instructed to stand in a single file line to maintain order and as a safety/security measure, that the Plaintiff and other inmates were given every opportunity to eat if they were in compliance with the procedures, and that because Plaintiff was being loud, disrespectful and non-compliant with his orders, Plaintiff was instructed that he would not be able to get a food tray until he was in compliance, which never occurred. See generally, Marquez Affidavit.

The Defendants have also submitted an affidavit from Janine Davis, who attests that she is the nurse administrator at RCI. Davis attests that she has reviewed Plaintiff's medical records while he was incarcerated at RCI and that, other than coming to medical in August 2009 as a new intake, Plaintiff's only visit to medical was on January 21, 2010 for a toothache. Davis attests that Plaintiff had no further treatment at RCI prior to his transfer to WCI, and that Plaintiff's medical



- 5 -

records or devoid of any allegations of injury or encounters with medical staff for any illness or injury resulting from the incident alleged in the Complaint. See generally, Davis Affidavit.

The Defendants have also submitted an affidavit from Robette Singleton, who attests that she is the Health Care Administrator at WCI. Singleton attests that she has attached a copy of Plaintiff's SCDC Health Services Medical Summary to her affidavit as an exhibit, which reflects the treatment Plaintiff received from January 8, 2010 until July 5, 2011. Singleton attests that Plaintiff's medical records show that he was seen in April 2010 for dental care, and that his next visit to the medical department was not until December 2010 for a sore throat. Singleton attests that Plaintiff's medical records are devoid of any allegation of injury or encounters with the medical staff for any ailments or injury resulting from the alleged incident which took place on or around October 8, 2010 as set forth in the Complaint. See generally, Singleton Affidavit.

Finally, Samuel DeLoach has submitted an affidavit wherein he attests that he is employed by the SCDC in the horticulture department. DeLoach attests that during the time period relevant to Plaintiff's Complaint, he was employed in the horticulture department and had no involvement with the Beaufort B Wing housing unit, nor did he have any personal involvement with the Plaintiff. See generally, DeLoach Affidavit.

As an attachment to his memorandum in opposition to the Defendants' motion, Plaintiff has submitted an affidavit in which he states that "since the institution of this action (in part) the Defendants has implemented an memorandum in regards to RCI day room housing. That upon knowledge and belief, this inclusion constitutes an admission to allegations contained in Plaintiff complaint." See generally, Plaintiff's "Affidavit".[4]

---

[4] Although styled as an affidavit, there is no notary certification on this document.



Plaintiff has also submitted a copy of this Step 1 Grievance Form from Grievance No. RCI 1137-09, as well as copies of what appear to be newspaper articles about inmates being awarded damages in cases involving unsanitary conditions. Plaintiff has also submitted a copy of what appears to be the indictment from his criminal case, and a copy of an order from the Supreme Court concerning a post-conviction relief action he had filed. See Plaintiff's Exhibits.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants initially argue in their motion, inter alia, that this case should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Pursuant



to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, Congress has mandated exhaustion regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted the affidavit from Ann Hallman, who sets forth Plaintiff's grievance history. Defendants contend that this evidence shows that Plaintiff failed to exhaust his administrative remedies because he did not complete either of his grievances through an appeal to the Administrative Law Court. Hallman Affidavit, ¶ ¶ 3-6, 9-10. However, Plaintiff was not required to appeal a denial of his Step 2 grievances to the Administrative Law Court in order to exhaust his administrative remedies for purposes of this lawsuit, as conditions of confinement claims, such as are being asserted here, do not require exhaustion past the Step 2 institutional level.



See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007); Lowry v. Davis, No. 06-509, 2006 WL 3759828 at * 2 (D.S.C. Dec. 18, 2006)["It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."].[5] Therefore, Defendants' argument that Plaintiff failed to exhaust his administrative remedies with respect to his claim concerning being locked down in the day room without restroom facilities or drinking water (Grievance No. RCI 1137-07) is without merit, as it is readily apparent that Plaintiff exhausted this grievance though a decision on his Step 2 appeal prior to filing this lawsuit. See Hallman Affidavit, and attached Exhibits [Step 1 and Step 2 Grievance Forms for Grievance No. RCI 1137-09].

However, with respect to the claim asserted by Plaintiff in his grievance filed at the Wateree Correctional Institution, the evidence reflects that Plaintiff did not exhaust this grievance prior to the filing of this lawsuit. Plaintiff's initial grievance (Grievance No. WCI 0527-10) was submitted on October 19, 2010, but was subsequently returned unprocessed for failure to comply

---

[5]If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process *and* also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973). However, Plaintiff is not challenging a disciplinary conviction in his grievances.



with the filing requirements. Hallman Affidavit, ¶ 7, and attached Exhibit [Grievance No. WCI 0527-10]. Plaintiff then filed his second grievance, Grievance No. RCI 0552-10, on November 30, 2010. Plaintiff thereafter filed this lawsuit on February 18, 2011, prior to receiving a response to his Step 1 grievance. See Long Affidavit, attached Step 1 Grievance Form for Grievance No. WCI 0552-10. Plaintiff then appealed the denial of his Step 1 Grievance by filing a Step 2 Grievance, on which he received a final Step 2 denial on July 13, 2011. See Long Affidavit, attached Step 2 Grievance Form for WCI 0552-10. That, however, was well after Plaintiff had filed this lawsuit. Therefore, Plaintiff failed to exhaust his administrative remedies with respect to the claims asserted in that grievance prior to filing this lawsuit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."].

For his part, Plaintiff does not even address Defendants' argument that he failed to exhaust his administrative remedies with respect to his WCI claims in either his memoranda or his exhibits filed in opposition to the Defendants' motion for summary judgment. Therefore, the Defendants are entitled to summary judgment on Plaintiff's WCI claims. Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies]; see also Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other - to excuse compliance with



the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)). Further, as Sergeant Marquez is only named as a party Defendant with respect to Plaintiff's WCI claims, Marquez is entitled to dismissal as a party Defendant in this case.

**II.**

With respect to Plaintiff's conditions of confinement claim based on the lock down that occurred at the Ridgeland Correctional Institution, as employees of the Department of Corrections, the remaining Defendants are all subject to suit for damages under § 1983 in their individual capacities. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is seeking damages against these Defendants in their individual capacities. Nonetheless, after careful review of the filings in this case as well as the arguments of the parties, the undersigned finds and concludes that Plaintiff's claim is without merit, and that the Defendants are therefore entitled to summary judgment.

In order to establish a violation of his constitutional rights, Plaintiff must have evidence not only showing that his living conditions violated contemporary standards of decency, but that prison officials also acted with deliberate indifference to such conditions. The first of these factors, known as the "objective" component, requires a showing that the alleged deprivation was "objectively sufficiently serious" such that the conditions denied the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Hudson v. McMillian, 503 U.S. 1, 6 (1993). The second factor, the "subjective" component, requires Plaintiff to show that prison officials acted with deliberate indifference to this "sufficiently serious" deprivation. Farmer, 511 U.S. at 834. This



second component requires more than mere negligence by a named Defendant. Rather, Plaintiff must have evidence showing a reckless disregard by a Defendant of a substantial risk of serious harm. Id., at 835-836.

With respect to the objective component, Plaintiff has failed to present any evidence, other than the general and conclusory statement in his Complaint that inmates were not allowed to use the restroom, drink water or eat in a sanitary manner during the period of time they were locked down in the prison day room, sufficient to give rise to a genuine issue of fact as to whether a constitutional violation occurred. While Plaintiff does not indicate in his Complaint precisely how long these lock down conditions continued, in his grievance he indicated that it lasted from approximately midnight until the following day at around 1:30 p.m., a period of about seven and one half hours. Hausey attests in his affidavit that when a unit is on lock down for security reasons, the inmates are allowed to use the restroom and have water at specific time frames during the course of the lock down, and that he did not observe the Plaintiff or any other inmates going to the bathroom in bottles or mop buckets (which would have been in a storage closet in any event), nor is he aware of any complaints of this being done by other inmates. However, even assuming Plaintiff's version of the events (in which he concedes that inmates were provided with food to eat) to be true for purposes of summary judgment, being deprived of access to a bathroom (although not being prevented from actually going to the bathroom) for a short period of time does not amount to a per se violation of a prisoner's constitutional rights where there is no resulting serious injury. Farmer, 511 U.S. at 834 ["Objective" component requires a showing that the alleged deprivation was "objectively sufficiently serious" such that the conditions denied the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety]; Vacca v.



Scott, 119 Fed. Appx. 678, 679 (5th Cir. 2005)[Finding that although Plaintiff averred that Defendants acted with deliberate indifference in denying him access to a bathroom because they knew of and disregarded excessive risk to his present and future health, his conclusory allegations failed to state the nature of the risk to his present and future health sufficient to give rise to a § 1983 claim]; Qawi v. Howard, No. 10-11, 2000 WL 1010281 at * 3-4 (D.Del. July 7, 2000)[denial of use of bathroom for six hours during which inmate was forced to urinate in a drinking cup and bowl and defecate into a paper bag did not constitute sufficiently serious deprivation because duration of condition was brief and inmate suffered no significant health risk]; see also Hudson v. McMillian, 503 U.S. 1, 6 (1993); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1977)[accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."];. see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."].

Further, there is no indication in Plaintiff's medical records that he suffered any serious or permanent injury as a result of this allege deprivation, or indeed any injury at all; Plaintiff has himself submitted no such evidence; nor does he allege any permanent or even any significant injury in his verified Complaint. See Davis Affidavit, with attached medical records. This lack of evidence, or even allegation, of a constitutionally compensable injury is fatal to Plaintiff's claim. See Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required];



Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; Vacca, 119 Fed. Appx. at 679 [Plaintiff's generalized pain and discomfort from being denied access to a toilet was insufficient to give rise to § 1983 claim; any pain and suffering for which he sought no medical treatment was de minimis and insufficient to state Eighth Amendment claim.]; cf. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"].

While Plaintiff correctly notes that, in response to his grievance, the Warden indicated that the issue of letting inmates out of the day room when a unit is on lock down would be addressed in a memorandum posted so that each shift can be on one accord; see Plaintiff's Exhibit, Court Docket No. 46-2; that does not constitute evidence that a constitutional violation occurred. It is a truism that prisons are dangerous and often times violent places, and that lock downs are sometimes required to maintain security and the safety of both inmates and prison officials. The fact that a lock down occurred, however, resulting in a period of discomfort for the Plaintiff and other inmates, does not in and of itself result in a violation of the Constitution. Anderson v. County of Kern, 45 F.3d



- 14 -

1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995); Qawi, 2000 WL 1010281 at * 3-4 [no constitutional violation for temporary denial of access to toilet during lockdown].

Finally, by reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intent to signal a lack of concern over Plaintiff's claim that inmates were not allowed access to toilet facilities during the relevant time period. However, while Plaintiff may have some state law claim or prison remedy he could pursue concerning this matter; absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his constitutional rights were violated sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, Plaintiff's § 1983 claim for monetary damages based on this incident should be dismissed. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994)[absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997) ["A defendant acts with



- 15 -

deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988)[prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted].

## **Conclusion**

Based on the foregoing, it is recommended that Plaintiff's claims relating to the conditions of this confinement while at WCI, to include the application of any "credits" to which Plaintiff believes he may be entitled, be **dismissed**, without prejudice, for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Cannon, 418 F.3d at 719; Freeman, 196 F.3d at 645. It is further recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's lock down claim from when he was housed at RCI, and that that claim be **dismissed** with prejudice**.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 16, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

